Good morning, Your Honors. My name is Jason Saunders of Gordon and Saunders, and I represent the appellate, Kobe Williams, in this case. I'd like to reserve three minutes, if I may. Okay. Please keep track of your time. Thank you. This case involves three issues on appeal. One is whether the government presented sufficient evidence that Mr. Williams tried to entice, induce, coerce, or persuade Rebecca to have sex with him as a minor. Two, whether or not the trial court erred in failing to suppress a decoy advertisement when the published advertisement wasn't preserved, and this was something used against my client to show that he answered this particular ad, and yet it was unavailable to him. And lastly, when the court imposed a sentence enhancement of obstruction of justice, whether he failed to properly, independently review the facts and make independent findings. The government concedes this issue, is that correct? Yeah, and briefly on that, I would just say, on remand, it should go back, allow the parties just to brief the matter, and then let the court make independent facts. Okay. We'll hear from your friend on the other side about what he thinks is the right remedy, but I think given your representation that that issue's been conceded, perhaps you want to spend your time on the first two issues. Yes. In fact, I'd like to spend most of my time on the first issue, the enticement statute. So I know the court is very aware of the facts of this case, but I want to point out a very salient part. This is a sting operation in Washington State where Washington law enforcement puts out an ad in Craigslist and other websites. They're trying to induce a client under state law to want to have sex with a minor. They're trying to lure him to come to the hotel and arrest him there so they can charge him with rape of a child and communicating with the minor for immoral purposes. And the reason I say that, and that actually did happen in this case, um, they did charge originally in the state court and there was even a plea offer, but then the federal government took over. Um, the reason why I think that's very germane to this argument is because the police did not try to get my client to say any words or do any conduct to try to entice the victim in this case, fictional Rebecca, into having sex with him. Instead, they just tried to get him to go to the hotel where they'd arrest him for attempted rape. So we don't have that as part of the sting operation itself. And that's, I think, an important factor. As I understand your argument from the briefs and then what you've stated here, does this rest on your interpretation of what entice means? Um, well, entice, you know, all those words are, they're common meaning. And, um, entice, I think it's words or conduct that my client is trying to convey to the victim to say, I want these sexual acts performed. I want to meet you at this place. I want, um, I want to have sex with you. But that's not what happened in this case. In this case, it was Rebecca who started the entire conversation about sex. Hey, I'm here. Sex for money. I don't want a boyfriend. Let's have sex. Here's the cost of the sex. Here's, I'm going to go to a hotel. Um, my client repeatedly talked about that he did not want to have sex with a minor. He was steadfast in that. And he said he wouldn't have sex with a minor. He would come there and walk away if he found out that she was a minor, but he never believed that she was a minor. Well, that of course kind of gets to the crux of the case. And you had argued that there needed to be some evidence of transforming or overcoming Rebecca in some way. So to do that, it would seem to me you'd have to amend the statute or you'd have to read words into the statute. So on that regard, which verb in the statute do you think this transformer overcome is either read into or imputed to? Well, I think the height decision that I cited, it talks about all four words and their definitions, but it talks about the intent of the client in those words to try to compel, force, coerce, entice. So it's talking about she might not have wanted to do it, but. Yeah, I, you know, I don't think you can just mush all the words together because coerce does have quite a different meaning, for example, than entice. Yes. Or persuading you, you know, we've persuaded you to come here to the Ninth Circuit today and we thank you. But we haven't really coerced you. So I mean, each of the words does have different meanings. So it seemed to me it would have to be somehow either underinduce or entice that you are trying to make the distinction. Is that correct? I think so. I think you're right, Your Honor. But, you know, I think if we step back even more, what we have in this case, and all circuit courts agree that what you're trying to do is find the defendant is trying to gain the assent of the victim, right? So we're just trying to have her say, yes, I'll do what you're proposing. I'll do the things that you're proposing. And in that case, I cited the Mahana case. And I think that's a very interesting case because it's very similar to the facts here, where there's a boy, Brett, who says to Mr. Mahana, I'm gay. Are you interested in men? He says, yes. The boy says, I'm interested in older men. I get into them. Do you want to have oral sex? And they meet at a place. And in that case, the court said, well, all that conversation stemmed from the alleged victim. It didn't stem from him. And therefore, you don't have sufficiency for the enticement statute. And I think that's very important because the same thing happens here when it's Rebecca who is eliciting and encouraging and enticing and inducing my client to have sex with her. He's not inducing her. She's inducing him. And like I said, the reason why is because that's not how this sting operation was set up. They don't care at that time that there's any enticement by her. And they don't care that he's not enticing because that's not what they're looking for, for their state sting operation. What was your defense at trial? The defense at trial was that she was a minor. And he said that I never believed that she was a minor. But he was steadfast in saying that he was not going to go over there repeatedly throughout his texts if she was a minor. And that's why he kept trying to get confirmation. Let's meet somewhere else. Let's try to meet somewhere so I can verify that you're of age because he believed she was. And so that was his defense. Weren't there, you know, the messages? Didn't the messages make it clear that she was a minor? Why? She was 13, only 13. I would argue that she repeatedly said it. But, you know, he's a... And his defense was, I didn't know she was 13. Well, just because someone says something doesn't mean it's true, right? So he took the fact that many different things. One of the facts is the photo that she sent. He saw that there's facial recognition software used, and it's pretty easy to. It's pretty obvious that it is. But also in how she expressed herself and how she relayed. Even the picture that she sent, she was in the driver's seat. She had some t-shirt on with a 1990s band sublime. But he was convinced in his own mind that she was not 13. But if she was, he wasn't going to have sex with her. And that was his defense at trial. The government seems to think in its answering brief that as long as Mr. Williams intended to have sex with a child and drove out to have sex with the child, he's guilty of the offense. But that is not the case at all. This court was very clear in Eller that the statute for the enticement statute is designed to protect children from the act of solicitation itself, not the act of sex. The state also cites DINGRA. I hope I'm pronouncing that correctly. I think that's an interesting case. The government's trying to argue that in that case, they were talking about you can't be, it doesn't matter if you're a willing participant because at the end of the day, what matters is the defendant's frame of mind. And I agree with that. And I understand that. And I know that the case law is clear on that, but that's not our argument. Our argument is that some words, some conduct, something in the record has to show that he was trying to induce her to have sex. And DINGRA is interesting because the facts in those cases. What about that exchange, which is a little odd, where he talks about willing to help her out with her education. Yeah. And, but she says, I'm, and he's going to give her money for tuition, like he's some kind of, you know, foundation helping out youth. But she says, I'm 13, you want me to lie? And so it's out there. Now he doesn't have to believe that. And so they say, okay, we're going to talk more tomorrow. Right. Why isn't that sufficient? Well, you know, she's already originated the conversation. She's also already in, repeatedly said what she wants to do and for what amount of money. Him saying, I'm bringing over money and you could buy, you know, you can do something with that money is not an inducement. It's already done. I mean, what's interesting in this case is that he never tried to entice her to do anything or get her assent. Her assent was always there. So you're just basically saying he set up a consensual relationship with somebody who's 13. Yeah. You know, and I don't know if that's difficult to kind of digest. I'm not saying that your honor, as much as I'm saying that, that one line is not sufficient for enticement when all the record shows that she was already talking about the money that she would have him pay and where it's going to be and repeatedly saying, come over for money, come over for sex for money. That's all I want. Repeated, repeated and repeated. What's interesting too is in the Mahana case, the evidence also showed that the defendant was reluctant to have sex with the minor and repeated that. And that was important in the decision. We have that here too. And what's important for the enticement statute is when you're saying, I'm not going to have sex with you if you're not 18 and over, that shows the opposite of enticement, right? It's showing discouragement. It's showing reluctance. It's showing, I'm not going to do this. It's saying, this will be the end if it turns out that you're not of age. So it's the opposite of enticement. And I think that's important to bring out too. But what I was talking about, I'm sorry, to return to it, Dhingra quickly, was that this was a case too, where Dhingra saw a young girl's comment on a homepage about having sex with her boyfriend, wanted specific facts of what acts she performed, wanted to have oral sex. He wanted her to have oral sex on him. And that's the opposite of what occurred in this case. This is a case where she was enticing him and luring him to have sex with her so they could arrest him when he came out for rape of a child, which is a Washington law. I thought that case basically said that your willingness or consent is irrelevant. Yeah. The willingness of the participant is relevant, but that's why I was citing Eller before, because really it's not the wanting to have sex with a minor that is important. Solicitation is what we're trying to prevent and inhibit. So did he solicit, did he do any solicitation of her to have sex with him? And the answer is the record doesn't show it. There's also one last case that the state cites is Goitsky. It's the same idea where the court found that conversation with the minor describing the defendant wanting sexual acts such as rubbing the boy's bum and putting his penis in the boy's mouth and proposing the rendezvous was sufficient to find him guilty. But these are all cases where it is the defendant who is acting and eliciting and enticing the victim. And this case is the entire opposite because they just didn't care about it and they weren't hoping that he would and he never did say it. If I can move on, if the court has any other questions on that one. Counsel, you're almost out of time and I know you wanted to reserve some time. I'll put a couple minutes on the clock for your rebuttal, but I know you had another issue that you didn't address. I don't think we have any questions right now, so perhaps you can raise some of that on your rebuttal. I will do that. Okay, thank you very much. Good morning, your honors. May it please the court. David Herzog on behalf of the United States. I was not trial counsel below. My intent was paid sex with an adult escort. That's at SER 190. The defendant testified as to what he was there to do, which was have sex with what he claimed to believe was an adult, Rebecca. He's entitled to do that. He's entitled to take the stand and the jury is entitled to disbelieve him. And on a rule 29 standard, where the standard review is so deferential to the jury's findings, the sufficient evidence here is demonstrated. With regard to what the jury could rely on in order to find that he persuaded, induced, enticed, or coerced, there were four days of communications between July 23rd and 26th of 2023. How should the court interpret the term entice under the statute? I think the court should look to Eller. Eller, I think Eller and Meek give the court the definition of it. What Eller talks about actually is not to dodge the court's question, but it's persuade. And what does it mean to persuade, which is one of the other words in the statute. And what Eller says is negotiating what a person will do in exchange for what amount of money is, and this can you just take a pick? I'm curious what the product is for $2,500. And then she sends a picture, the age regressed photograph. And then he agrees to $2,500. And that's at 2 ER 138 to 140. And then at 2 ER 150, the defendant lays out for her what he expects to get for the money he's paying. And he says, sex, obviously. Those statements combined with his statement that he was there to have sex with Rebecca made the only issue for the jury at trial. Did he believe that she was an adult or a minor? And on this evidence, on the fact that she kept saying, I'm 13, I'm 13, I'm 13. The jury could conclude that fairly. Any rational juror could. And the fact that the defendant, I think it was a law enforcement officer and certainly was preparing to set up a trial defense. If he did get caught, I think is how those statements I'm going to back away. If you're really 13, I think that's how those can be read as a, he was preparing his trial defense and he's entitled to do that. But when he takes the stand and says, I didn't believe she was a kid, the jury's entitled to reject that. And that's all throughout all of these cases in this area, which is going back to DINGRA. So that's Meek, Makabagal, Getsky, and McCarran. The fact that he negotiated and said with her, said to Rebecca, for $1,800, I would really like to take a weekend, spend time with you, sex, obviously. Under Eller, that is persuasion, right? That is the essence of persuasion. What am I going to get for what amount of money? And they're negotiating, right? $2,500 for all night or $1,800 for all night. And they settle on $1,800. And then for substantial step, he shows up to the hotel, he has the money, he has more money than he needs. He got the money out, he drove two hours. Those are all substantial steps under all of the cases in this court. With regards to did he persuade her or did she persuade him, I would refer to this court, Your Honor's decision in DINGRA and Your Honor's decision in Meek. There's a sense in which, Your Honor, it's a terrible draw for the defense with the court having authored both of those two opinions, which I think resolve this. It's precedent or precedent whether I authored it or not. Yes, Your Honor. But what the defendant said at 2 ER 156 is, do you do anal, right? And his defense at trial was, one of the reasons I was trying to cheat on my wife was that she would not have anal sex with me. And so when he says to this person who keeps saying I'm 13, do you do anal? And she says, I can try it for a little extra. That is persuasion. He's trying to get her to engage in a specific sexual act. And that is Getsky, McCarran, Eller, Maka Pagal, Meek. Also, the fact that he keeps telling her he's an officer is persuasive. What he says is, I think it's both persuasive and to answer the court's question, it does induce or entice because he does it for two reasons. One, to show her that he's safe, right? I'm a cop. This is what he says. This is at 2 ER 149. I'm a cop and I will lose my job by doing this, but I'm not afraid. You know, if I make the transaction and proposal that you are in the clear. These transactions are hard for a cop that's not looking to arrest anyone. So, he indicates he does have the power to arrest, which is coercive. That's why I suggested meeting for coffee. Cops need people like you. I know how to make the transaction safe on your part. Then, when the undercover detective, the female undercover detective whose photos age regressed, she also talked to him on the phone three times. She said, I told him I was nervous that he was a cop and he said everything is going to be fine. That's 2 ER 231. At SER 181, defendant admitted he was trying to be charming, which is the nature of inducement and enticing. He's trying to get her to have sex with him. He admitted that he flattered Rebecca to have sex with her. Here, the court, forgive me for using the language directly, but this is at 2 ER 149. Rebecca says to him, so you a cop and you trying to fuck me doesn't make sense. What the defendant says in response is, are you saying that cops don't engage in this type of behavior? We're only human. What do you want me to do? I will introduce myself, show you my credentials and give you money. It could only harm me. Well, that's coercive and enticing and persuasive persuasive. I'm safe because I'm an officer, but I have the ability to arrest you also. So that's also coercive is and what she said at some point, there is nothing I do is legal. Everything I do is illegal. And they talk and the defendant talks to her about, he'll check on whether it's legal for her to have sex with his 18 year old son because he knows she's a minor. I would also just submit that the other facts of the case lend to the jury's finding rational finding that he did believe that she was a minor because what he said when they showed, when the, when he was arrested wasn't, Oh my gosh, she's an adult. You guys don't worry. It's an adult. I always believed it as adult. He says, I found a child screaming out for help. I'm a one man trafficking organization. I'm here to save her. The jury could believe that the inconsistency between those statements meant that he was not telling the truth. Also, when he testified and this is the defense, just in a very bad spot, testifying at trial, he had to admit that he lied. He lied to Rebecca. He lied to the officers. He lied about his boss. He lied to his wife after taking the stand, admitting that you're a liar, setting up a defense that requires the jury to believe you it's an uphill battle. And the defendant lost that battle with the jury and with the, the standard being, and this is a look, uh, the reviewing court must respect the exclusive province of the jury to determine credibility, resolve evidentiary conflict conflicts and draw reasonable inferences from the facts. Then you have to resolve all conflicts in favor of the verdict here. Uh, so with regard to the, what evidence there was in the record to show that this defendant met at least one, it only had to be one of the four verbs, but in the government's view, he met all four. It was coercive to tell her he was an officer. He did persuade her under Eller by negotiating what am I going to get for what amount of money he did induce or entice her by asking her, will you have anal sex with me? My wife won't as the testimony trial revealed. And so, so I said, just submit to the court that the overwhelming question in this case for the jury was, what did he believe? Did he believe he was showing up to have sex with a minor, or did he believe he was showing up to have sex with an adult? Because as the court has noted, both things are in the text messages. I'm 13. I'm 13. No, you're not. I'll back out. Okay. That is a fact question. That is the exclusive province of the jury. Uh, the jury's entitled, um, in the highly deferential standard to, to, uh, rely on that. Uh, I think the, the other arguments that are in the defendant's, that are, are lurking in the defendant's arguments on the sufficiency of the evidence, um, have been foreclosed by the court. Of course it can be an intermediary, right? It doesn't have to be, it can be a law enforcement officer undercover. That's Eller, Meek, Maka, Bagal, Dhingra. Um, and the law enforcement officer, um, can play the role of the minor or the role of an adult with access to a minor. Um, as, and that's McCarran. Um, so I just submit to the court that the evidence here was overwhelming and that's what the district court found, right? On the, the, the rule 29 motion or rule 33 motion after trial, the district court found that the evidence, the government had produced, um, overwhelming evidence that his intent was to have sex with a child and the jury could rely on that. Counsel, um, with respect to the warning in Moses advertisement, um, I understand that there may be several different ways to resolve this claim. Um, can you sort of walk us through the government's arguments, um, and, and which, which argument, um, you're, you're sort of relying on? Yes, Your Honor. Well, um, I would submit to the court, it's, it's a loser both on merits and procedure. Uh, on the procedure, um, it's waived, right? This, the, the, the, the argument what for the district court was, is it going to be authenticated at trial? That was the pre-trial motion. And the judge said, what judges always say, let's see with how the evidence comes in, the government can tie it up. So that was the actual claim. The claim now that unraised below the government, uh, that the court should have sua sponte with no objection omitted that advertisement because the final version wasn't posted. Uh, it would go, it just goes to wait on credibility. The, um, and this is at, uh, this is trial exhibit number one, page eight in the record. It's at 3 ER 352. This is the Craigslist posting warning in Moses confirmation email. And you'll note that when, after the, after officer Martinez posted the warning in Moses ad, what he got back was this email. As he testified, this email says what you, thanks for your posting warning in Moses, not yours or mine. So the only evidence before the jury about the post was that it did indicate her age. I want to be very clear. The only person who could post Rebecca's phone number was detective Martinez. There is no Rebecca. The defendant can take the stand and say, I responded to a different ad that Rebecca posted with her correct phone number, but that's not possible because there was no Rebecca. So the only, It seems really, um, sort of inconsistent from where I'm sitting to understand the defense's argument that the court should take into account the fact that Rebecca was a fictional prostitute soliciting sexual services for purposes of the enticement claim, but at the same time rely on this advertisement that he claims he responded to with respect to this individual, who he, for this argument is, is arguing existed as a real person. Yes, Your Honor. I think, I think the jury probably had the same trouble, um, which is that those, those claims are inconsistent. Um, I would submit to the court and want to be very clear. There never was a yours or mine advertisement. The defendant's entitled to take the stand and say that, and the government's been entitled to cross him, show he's lying, and then the jury can evaluate the weight of his testimony and credibility. There was never, there could not have been a yours or mine ad with the correct phone number. So when he, two hours after the warning in Moses ad called and texted that number, when he responded to the correct phone number, it had to be from the warning in Moses ad, which says she was 13. But even. But there's no evidence about a Craigslisting, Craigslist listing, correct? There was no, there was no evidence of the original ad that was. Well, there, there's two aspects. Let me just unpack it. There, the original ad is the warning in Moses. Yes, Your Honor. But he says, no, no, I got it from Craigslist listing. Which is that, I think he is saying the yours or mine was also on Craigslist is what I understand. And just to be very clear, there is no evidence of that, at least no physical evidence. That is correct. And of course the defendant had subpoena power and could have subpoenaed Craigslist and said, give me testimony from the officers. Martina said that that was the only, that that phone number is linked to his investigation and nothing else. Right. And so the evidence that the jury saw the draft ad that had her, I'm 30. Be careful. She's a prostitute. She's 13. Here's her phone number. They saw that draft. And then they saw the confirmation email from Craigslist saying warning in Moses ad was posted. What the defendant is now saying the government should have produced preserved and produced was the final advertisement from Craigslist saying that same information that goes to the weight, not the admissibility. I mean, that's, that's up to the jury to decide. Do we believe that because he responded to the right phone number, that was the ad that was posted. And of course they did because that's the only way that Troy or defendant could have gotten the right phone number is from that ad. Um, and so the, the, the fact that the, the jury could have been in the jury room and said, you know what? I think all 12 of us need to see that final ad. If we don't see that, we're going to acquit. And that would have been a fair outcome, but they didn't. They saw, they knew that the number of the phone number had been sent out. It had to be the morning in Moses ad. There was no yours or mine ad. If this court were to credit the defendant's claim and order us to produce the yours or mine ad, we couldn't do it because it doesn't exist. Um, and then remaining time, can you address the issue of the, um, of the resentencing and, and sort of what you believe to be the appropriate remand since the government I understand is conceding this point. I think we have to, Your Honor. I think that under Castro Ponce, um, the standard for that particular enhancement is slightly higher, which I think because you don't want to chill a defendant's testimony here. The defendant clearly challenged it, said, Your Honor, we need a ruling on this. I don't think we should get the plus two. I need you to find willful material false. And the court said it's in the PSIR. I'm, I'm, I'm getting it. That is insufficient under Castro Ponce. I think we have to concede that that was error. So this case, I think should go back to that judge for the findings of fact necessary to support that enhancement. Um, and the judge, are you essentially in agreement with the defense argument as to the remand? Oh, pardon me. I think that's correct, Your Honor. I think that the court, uh, the government's view is that the court should affirm the convictions, affirm the sentences, uh, to the sentence to the extent that it is proper, but remand exclusively for a consideration of the factors, the three factors, willful material false that go to the obstruction enhancement and ask the district judge, please reevaluate that. If you make those findings, impose the enhancement and resentence with. If you, if, if you don't, then you can resentence with the remand not in the, not in play. I think that's the, and I, I know this court has a. Basically, a limited remand for resentencing with respect to the enhancement under that section. Alone. Is that correct? Only on that, yes. Limited remand for that purpose only. And you would agree that there, the party should brief those issues before the court for the limited remand? Oh, yes, Your Honor, because we have to, both sides have to show willful material and false. I mean, the, the trial testimony is replete with it, but I do think we need to put that in front of the court. But initially I thought you wanted, you, you would have agreed there should be, the sentence should be vacated, or that enhancement should be, the sentence, that enhancement should be vacated and sent back. Yes, Your Honor. I think under this court's precedent, the, the whole sentence, I think, would be vacated with the limited remand on resentence with the enhancement, either supported or not supported by the facts that the district, the district court considers. Theoretically, the district court could choose not to impose it. That's right. That's right. You could say I can't make these findings or whatever.  And that's why I think it's helpful for us to brief it, to show the court, well, this is where the government thinks the defendant was willful material and false. He found it the first time, saying it's in the PSIR, it's all over the PSIR. But that is, I do agree, that's insufficient under Castro-Ponce. And I understand why. I mean, it's, you're talking about chilling a defendant's First Amendment rights. If I could just make one brief comment before my time is up about publishing. Oftentimes, the judges of this court will ask, is there a reason for us to publish in any given case? I would submit to the court, this case does present four reasons for publishing. The first is that it will help practitioners know what kind of conduct constitutes the meeting of the four verbs here. The only version of the fact pattern that hasn't been published on is this one, because you've got, you have multiple variables, right? Is the undercover acting as a parent or a child? Is there payment or not? Is there a law enforcement officer or not? And starting with Razhkovsky, which is a 24-22A case, and then Dhingra, all the way through Meek, Makapegal, Getsky, and Eller, all of the other variables have been published on, but not this one. I think it would be helpful because this argument, you have to overcome the will. That argument is made in a lot of 24-22B cases. This is the area in which I practice. This happens a lot. It would be helpful, also, this court has been very clear that it does not endorse Haidt, which is the D.C. Circuit version of this case, that said you do have to overcome the will. This court has not ever expressly disavowed Haidt, and in Eller, Judge Owens actually cited Haidt for the persuasion standard. And so I think it would be helpful to have a clear published opinion that in the Ninth Circuit, Haidt is not the law. Eller is the law. Makapegal, Meek, you do not have to overcome the will of the minor to qualify for a 24-22B. And I think that actually may be more efficient for the court then, too, because we can file motions for summary affirmance when that's the only argument made. Thank you, counsel. Thank you, Your Honor. Appreciate your argument. Mr. Saunders, we'll put four minutes on the clock for you for rebuttal. Thank you, Your Honor. Just quickly for the enticement statute. I think at a certain point when the police are the ones who are enticing my client to do all kinds of acts, they're the ones who are initiating contact about sex for money. They're the ones who are talking about a meeting place. If client finally succumbs to their wishes and is trying to negotiate a price or do something else and goes out there, the enticement's already done. The enticement was the detective enticing client to go there. Did you ever argue that he was entrapped? Well, that's a good point. He never got to argue that. I think one of the reasons why is because they never saw the original ad and they didn't get the ad for the yours and mine as well. And it's crucial for entrapment that the defense is given an opportunity to the complete record. So to have a meaningful defense, he's got to see what the ad is. He's got to respond to it. All he could do at trial is say, well, you know, I never saw the ad. Your argument that when Mr. Williams refers to the missing published decoy advertisement and his argument that the government committed a Brady and Trumpetta violation, which ad is he referring to, the warning and Moses ad or the yours and mine? Both. I mean, my argument was both, and I'm sorry if that wasn't clear in the briefing. My argument is obviously this is a crucial part of the, there's only four elements as a state is going to, four factors that the state's going to produce at trial. One is the Craigslist ad in every sting operation. One are the text messages. The third one will be maybe a female officer having a telephone call with the defendant. And then finally, the footage of the arrest. There's only four things. This goes to the heart of the matter. This is not tangential. It's an important thing. How are the, how is the advertisement exculpatory? Well, you know, I would even argue that when you're not producing the original product, it's exculpatory and he shouldn't even have to prove that. I understand from better, but I guess my argument is, you know, this is your case. It's the heart of the matter. It's not tangential. It's material. And the fact that it's absent exculpates my client. Well, your argument first time around really did sound like entrapment. You know, they set him up. They did this, this, and this. So we have the draft ad and we have the confirmation. And you, of course, say we're missing the middle piece. Or the final piece. That'll ultimately be evidentiary. And there was testimony about that. As to the yours or mine, if it didn't exist, I'm having some trouble understanding. You know, why you didn't argue? Well, there's entrapment and it existed, but they're not showing it to us. But it existed. Well, he doesn't have it. And they say, well, it's impossible to exist because there's only one number that you can call and you'll get, you know, the officer on the other end. So it just, it sort of smells like entrapment. But your argument now doesn't really get him out of the soup, is what my concern is. Yeah, and entrapment was never argued below. But I think. I understand. Many things didn't quite get argued below. Right, right. And to be honest with the court, there is a Celebrite document that shows there's a yours and mine advertisement that client saw on his phone at a certain time. So it's out there. It's not a made up thing. I don't know what it says. I, this is not a proper place to talk about things outside the record. Well, yeah, let's just come back. Is that in the record? It's not in the record, Your Honor. Any testimony about that? Yes. He testifies. That's what he saw. So they could believe him. Right, exactly, Your Honor. But I think that's what I'm trying to argue is that, you know, this is more than a discovery violation not to include that published piece. It's crucial to the case. It's not tangential. And really, it's something that in every one of these sting operations, I can't understand why any police officer wouldn't know how to print screen when the thing is published. I think that's why I'm sort of focused on whether or not it's and how it's exculpatory or material, because without having, you know, it's a he said, she said here that your client says this existed. The government says it doesn't. We really don't have to resolve that disagreement if you unless, you know, you can also show that it's material and exculpatory. And that I'm having trouble with those. It's hard to do that with a missing document, right? Why? I mean, it seems to me that you could argue, you know, I don't I don't understand the legal argument as to why having the document as even your client describes it existed. How does that provide something different than than having testimony from an officer as to the character, the, you know, language and and content of the advertisement that is that's the officer's testimony. Of course, that's not as good as the written record of record that should exist. This is a very important piece of the government's argument. So I'm just saying that. We don't know what it says. We have testimony that he says what it says, and we have a draft of something earlier. But that's just his testimony. The real evidence. You know, I'm having some trouble wrapping my head around it because, one, he never saw it, according to his testimony. But two, it also had her age in it. So that's not exculpatory. So says the police officer. But we don't know because we don't have it. Well, we have we have a draft of the draft and we have confirmation we don't have it. You're correct. Yeah. Yeah. And that really is the government's duty to present a complete record of what happened, especially in these sting operations where this is integral to their case and it should be produced. And it wasn't. Thank you, Your Honor. Thank you very much. Thank you to both counsel for your argument. It was very helpful. And today is the last day that this panel is sitting with Judge McEwen. So on behalf of this composition of the panel, I'd like to thank our court staff, IT, and we will stand in recourse until tomorrow. Thank you.
judges: McKEOWN, PAEZ, DESAI